IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARANDA SMITH; LANE N. SHELSTAD, Plaintiffs, vs. INDIANA COUNTY JAIL; COUNTY OF INDIANA; MARGARET DAILEY; MOLLY GROSS; INDIANA COUNTY PRISON BOARD; CAROL HUMMEL, Defendants. | Civil Action No. 12-728 Magistrate Judge Maureen P. Kelly Re: ECF No. 10 |

## OPINION AND ORDER

**KELLY, Magistrate Judge**

Plaintiffs Maranda Smith ("Smith") and Lane N. Shelstad ("Shelstad"), (collectively "Plaintiffs"), through counsel, have filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging the violation of their rights under the Eighth Amendment to the United States Constitution. Plaintiffs' claims arise out of alleged sexual assaults by Defendant Officer Molly Gross ("Gross"), and intimidation and verbal threats by Defendant Margaret Dailey ("Dailey"), during Plaintiffs' incarceration at the Indiana County Jail. [ECF No. 8].

Plaintiffs also allege claims against the Indiana County Jail, County of Indiana and Indiana County Prison Board (collectively "the Municipal Defendants), as well as Warden Carol Hummel ("Warden Hummel"), who has been sued in both her individual and official capacities. The Municipal Defendants and Warden Hummel have filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), contending that (1) Plaintiffs cannot maintain a cause of action against the

Indiana County Jail because it is not an entity amenable to suit; (2) Plaintiffs' claims against the supervisory defendants, including Defendant Warden Hummel, must be dismissed because the Complaint fails to allege facts establishing their personal involvement in the violation of Plaintiffs' constitutional rights; and (3) Plaintiffs' claims against Indiana County and the Indiana County Prison Board are insufficient and should be dismissed because there is no basis to conclude that any County policy, practice or procedure is implicated in causing Defendants Daily and Gross's alleged criminal conduct. [ECF Nos. 10, 11, 12]. Plaintiffs respond, conceding that the Indiana County Jail has been improperly joined as a Defendant in this action and agree to its dismissal. [ECF No. 14]. With regard to Defendants' remaining arguments, Plaintiffs contend that the facts alleged as to Defendants Hummel, Indiana County and the Indiana Prison Board are legally sufficient to withstand Defendants' Motion to Dismiss.

For the following reasons, the Motion to Dismiss on behalf of the Municipal Defendants and Warden Hummel [ECF No. 10] is granted without prejudice.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

This Section 1983 civil rights action, originally filed in the Court of Common Pleas of Indiana County, Pennsylvania, on March 1, 2012, [1] arises out of the alleged violation of Plaintiffs' constitutional rights during their incarceration at the Indiana County Jail in 2009 through early 2010.[2] The Complaint alleges that in December 2009, Defendant Gross initiated unsolicited physical sexual contact with Plaintiff Smith, and that between November 2009 and March 2010, Defendant Gross sexually assaulted Plaintiff Shelstad on three separate occasions.

---

[1] Defendants subsequently removed this action to federal court on June 1, 2012.
[2] As indicated in the public record dockets of the Plaintiffs' underlying criminal actions for the relevant time period, an order granting the release of Plaintiff Lane Sheltstad dated February 2, 2010, was entered on February 3, 2010, (see, http://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-32-CR-0001087-2009), and an order granting the release of Plaintiff Maranda Smith dated March 2, 2010, was entered on March 3, 2010 (See, http://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-32-CR-0000370-2006).

Neither Plaintiff availed herself of the jail grievance procedure because both "felt intimidated and threatened by Defendant Gross," and/or intimidated by Defendant Warden Hummel. [ECF No. 8, pp. 4, 6, 12]. With regard to Defendant Dailey, Plaintiff Smith seeks damages for verbal threats and an attempt to "slam Plaintiff Smith's had in the cell door's hatch … narrowly missing." [ECF No. 8, ¶ 32].

Plaintiffs also allege claims against Defendant Hummel, broadly claiming that "Defendant Hummel showed deliberate indifference" toward Plaintiffs' rights and that "it is believed and averred that Defendant Hummel failed to supervise, failed to prevent harm, and failed to train Defendants Gross and Dailey." [ECF No. 8, ¶¶ 37, 56]. With regard to particular conduct, Plaintiff alleges that "because of the common knowledge of the female inmate population" of Defendant Gross's misconduct, Defendant Hummel "knew or should have known of the cruel and unusual punishment" faced by Plaintiffs and so "acquiesced in the subordinate's violations." [ECF No. 8, pp. 5-6, 8]. The Complaint also alleges that because Defendant Hummel was intimidating in one prior unrelated encounter, Plaintiff Smith felt uncomfortable using the jail grievance procedures.

The Complaint alleges claims against Defendants Indiana County Jail, Indiana County Jail Board and Indiana County "under 42 U.S.C. § 1983" because each acted pursuant to an unspecified "policy, custom, and failed to train Defendants Gross and Dailey with deliberate indifference, and thus failed to prevent harm to Plaintiffs Smith and Shelstad." [ECF No 8, pp. 9-11]. Plaintiffs also allege claims against each of these municipal defendants for negligently hiring both Defendants Gross and Dailey, who "were likely to inflict harm and sexually assault inmates." [ECF No. 8, pp. 9-12]. Plaintiffs allege that such negligent hiring "intentionally and recklessly violate[d]" their Eighth Amendment rights.

## II. STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must read the complaint in the light most favorable to the non-moving party and all well-pleaded, material allegations in the complaint must be taken as true. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397–98 (3d Cir. 2000).

The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In Twombly, the Supreme Court held that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Supreme Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a Rule 12(b)(6) motion to dismiss." Id. at 678. Only "a complaint that states a plausible claim for relief [will] survive[ ] a motion to dismiss." Id. at 679. In Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit provided a two-part test to determine whether a claim survives a motion to dismiss. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as

true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' The plaintiff must show 'the allegations of his or her complaints are plausible. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief.' [This] 'plausibility' determination will be 'a context – specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679.

## III. DISCUSSION

### A. Indiana County Jail

As conceded by Plaintiffs, Defendants correctly contend that the Indiana County Jail cannot be named as a Defendant in this action because it is not a "person" under Section 1983. Section 1983 provides in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255–56 (3d Cir.1994).

The claims asserted against the Indiana County Prison are subject to dismissal because prison facilities are not "persons" for the purpose of § 1983 liability. See Mitchell v. Chester

5

County Farms Prison, 426 F. Supp. 271 (E.D. Pa. 1976). Accordingly, the Motion to Dismiss claims against the Indiana County Jail is granted. See, also, Ruff v. Health Care Adm'r, 441 F. App'x 843, 845 (3d Cir. 2011).

**B. Warden Hummel**

Plaintiffs' Complaint sets forth claims against each of the supervisory and/or municipal defendants, including Warden Hummel, for alleged deliberate indifference to the inhumane conditions of confinement, resulting in the sexual assaults. Defendants move to dismiss the claims against Warden Hummel because Plaintiffs have not alleged facts sufficient to set forth a plausible claim for relief. In particular, Defendants contend that the Complaint does not allege the factual predicate of knowledge and participation in the violation of Plaintiffs' constitutional rights required to sustain a claim against her.

As Plaintiffs concede, vicarious liability is not applicable to Section 1983 suits; instead, personal involvement is required to state an actionable claim, which "can be shown through allegations of personal direction or of actual knowledge and acquiescence" in a subordinate's activities. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Santiago v. Warminster Tp., 629 F.3d 121, 129 (3d Cir. 2010). Indeed, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them." See, Jetter v. Beard, 183 F. App'x. 178, 181 (3d Cir. 2006) (quoting, Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)).

To state a claim for supervisory liability, a complaint must allege the defendant's *actual* knowledge to support a claim of *deliberate* indifference. This distinction in pleading requirements resulted in the dismissal of a complaint in Santiago v. Warminster Tp., 629 F.3d at 134, where the plaintiff implied but did not allege facts establishing actual knowledge. Instead,

6

the complaint implied the presence of the supervisory defendants in the vicinity of alleged unconstitutional conduct, and therefore alleged broadly that they knew of and acquiesced in the use of excessive force.  The United States Court of Appeals for the Third Circuit concluded that these allegations did not support an inference of awareness of subordinates' allegedly unconstitutional activity so as to support a claim predicated upon personal involvement.  The Court of Appeals affirmed the dismissal of the claims against the supervising officers, holding that the plaintiff's allegations were insufficient to establish the degree of knowledge sufficient to "nudge [[his]] claims across the line from conceivable to plausible" so as to satisfy Twombly. Id., citing, McKenna v. City of Philadelphia, 582 F.3d 447, 460 (3d Cir. 2009).  Similarly, in Arguenta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011), the Court of Appeals affirmed the dismissal of an action against supervising defendants where the complaint did not plausibly allege legally sufficient notice of the underlying unconstitutional conduct of their subordinates:

> Plaintiffs did reference an impressive amount of documentation that allegedly provided notice to Appellants of their subordinates' unconstitutional conduct. However, these alleged sources of notice were fatally flawed in one way or another. Broadly speaking, we must point out the typical "notice" case seems to involve a prior incident or incidents of misconduct by a specific employee or group of employees, *specific notice of such misconduct to their superiors*, and then continued instances of misconduct by the same employee or employees.

Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d at 74 (emphasis added).

In the case at issue, Plaintiffs' claims, which are based upon allegations of imputed and assumed knowledge, or speculative tolerance of past behavior, are insufficient.  There are no allegations that Warden Hummel participated in or directed the sexual misconduct at issue. Instead, Plaintiffs rely upon allegations that the sexual activity of Defendant Gross and Dailey were "common knowledge of the inmate population." Plaintiffs impute this purported general

7

knowledge within the inmate population to Warden Hummel, so as to create an inference of notice and deliberate indifference, highlighted by her failure to act to prevent additional occurrences. ECF No. 8, ¶¶ 14, 15. However, the Complaint does not allege that the sexual misconduct was ever reported to Warden Hummel so as to infer a plausible claim of notice or "actual knowledge." In the absence of some actual knowledge or notice of Gross and Dailey's misconduct, Plaintiffs' allegations do not support a plausible claim of Warden Hummel's personal involvement in the violation of Plaintiffs' constitutional rights.

Alternatively, Plaintiffs attempt to allege liability on the part of Warden Hummel through inferring that she impeded inmate reporting of misconduct by, on one occasion, intimidating Plaintiff Smith with regard to an apparently unrelated and undisclosed issue.

A supervisor may "be liable if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate[,] and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011). However, at a minimum, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." Beers–Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989).

Plaintiffs' Complaint fails to meet these standards. First, the Complaint alleges "[d]ue to a previous interaction with Defendant Warden Hummel and the intimidating manor (sic) in which it was handled, Plaintiff Smith felt uncomfortable with the reporting procedures of the

Indiana County Jail." [ECF No. 8, ¶ 40]. This single instance of "handling" an undisclosed "previous interaction" in an "intimidating" manner does not equate to either a practice or a policy of ignoring threats of harm. Further, Plaintiffs have not identified any specific supervisory practice or procedure that Warden Hummel failed to employ with regard to the harm suffered. Plaintiffs have not alleged that Warden Hummel had actual knowledge of Defendant Gross's misconduct or that she knew the existing abuse reporting system was so inadequate, such that it created an obvious risk of harm of sexual abuse by a subordinate. See, e.g., Ward v. Taylor, 348 F. App'x 766, 768 (3d Cir. 2009) (there can be no liability based on supervisory liability absent identification of a specific practice or procedure defendant failed to employ and knowledge of the risk on defendant's part). Finally, the Complaint does not assert facts showing that Warden Hummel's handling of an unrelated situation was "the moving force" behind the harm suffered by the Plaintiffs. See Iqbal, 129 S.Ct. at 1949–54; City of Canton v. Harris, 489 U.S. 378, (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, 128 F. App'x. 240, 248 (3d Cir. 2005); McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009). Accordingly, liability cannot be predicated on a defective policy or procedure.

Finally, Plaintiffs assert a "failure to train" theory of liability as to Warden Hummel, alleging that she failed to train Defendants Gross and Dailey not to sexually abuse inmates in their care. This allegation, however, unsupported by any facts, relies solely upon the happenstance of the abuse and is insufficient to withstand a motion to dismiss.

In order to assert a claim of a failure to train or supervise, the United States Court of Appeals for the Third Circuit has held, "'[w]here ... the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to "deliberate indifference" to the rights of persons with whom those employees

9

will come into contact.'" Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir.1999) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." A less stringent standard of fault for a failure-to-train claim "would result in de facto respondeat superior liability on municipalities ...." see also Pembaur, supra, at 483, 106 S.Ct. 1292 (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials ...").
>
> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011)(internal citations omitted).

In Montgomery v. De Simone, 159 F.3d 120, 122 (3d Cir. 1998), the United States Court of Appeals for the Third Circuit held that the deliberate indifference standard was not met when the plaintiff brought a Section 1983 against a police department after one of its officers arrested her and charged her with speeding, driving while intoxicated, and refusing to take a breathalyzer. 159 F.3d at 122. In that case, the plaintiff alleged that, after pulling her over, the arresting officer's "demeanor changed," and he "asked her if she liked policemen or dated them." Id. at 123. Her subsequent Section 1983 failure to train claim was based on the contention that the arresting officer was "never trained not to sexually harass the female public and was not

10

disciplined as a result of the incident involving [the plaintiff]." Id. at 127. The Court of Appeals affirmed dismissal of the claims in favor of the police department, finding that the plaintiff pointed to no specific inadequacy in the police training program and failed to allege any action or inaction that could be construed as encouraging the officer's offensive actions. Id.

In the case at issue, Plaintiffs' Complaint similarly does not address the requisite elements to establish a claim. First, Plaintiffs' Complaint does not identify any particular failing in existing training relative to sexual assaults. Second, while the Complaint suggests similar constitutional violations, there are no allegations that Warden Hummel, or indeed any supervisory personnel were aware of and indifferent to the risk of injury, which could have been addressed by implementing some specific method of training. Instead, the Complaint does nothing more than reference Gross and Dailey's constitutional violations, and imputes their violations to Warden Hummel, alleging her implementation of some unspecified policy or custom or failure to train. As in Anderson v. Goga, C.A. No. 11-528, 2011 WL 4737569 (W.D. Pa. Oct. 5, 2011), "such conclusory and speculative accusations fail to state a claim" on the part of the Defendant Hummel.

Because the factual content pled in the Complaint does not allow the Court to draw a reasonable inference that Warden Hummel was the "moving force" behind Plaintiffs' injuries, the claims against her are dismissed without prejudice. Santiago v. Warminster Tp., 629 F.3d 121, 135 (3d Cir. 2010)(for facial plausibility sufficient to satisfy Iqbal, a claimant must specify what exactly the custom or policy was and how the policy was the source of the alleged injury). However, as indicated by Defendants, if the course of discovery brings forth some evidence upon which Plaintiffs' theories of liability against Warden Hummel find support, Plaintiffs may seek to amend their pleadings and properly assert such claims.

### C. Defendants Indiana County and Indiana County Prison Board

Defendants Indiana County and Indiana County Prison Board move to dismiss the claims against them because Plaintiffs have failed to allege facts establishing their involvement in the violations of Plaintiffs' rights. In response, Plaintiffs argue that the allegations of the Complaint are "well pleaded" with regard to the failure to implement training "that would ensure prisoners would be free from the sexual assaults of guards." [ECF No. 15, p. 9]

It has long been recognized that Section 1983 claims against municipal entities are significantly different than those against individual officials. The United States Supreme Court has held that municipalities and other local government units qualify as "persons" subject to liability under Section 1983. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690 (1978). However, a municipality cannot incur Section 1983 liability based on a theory of respondeat superior. Id. at 691. Rather, Section 1983 imposes liability "'if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.'" See Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011)(quoting, Monell v. New York City Dept. of Social Servs., 436 U.S. at 692. "[U]nder Section 1983, local governments are responsible only for 'their own illegal acts.'" Id., quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). Thus, Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S., at 694. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. Id.; Pembaur, supra, at 480–481. These are "action[s] for which the municipality is actually responsible." Connick v. Thompson, ___ U.S. ___, 131 S. Ct. at 1359 (quoting Pembaur, supra, at 479–48). A plaintiff must show a "direct

causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). See, also, Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990) (citations and quotations omitted). These standards ensure that municipalities may incur liability only for deprivations resulting from the decisions of "those officials whose acts may fairly be said to be those of the municipality." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403–04 (1997); see also Anderson v. Goga, C.A. No. 11 – 528, 2011 WL 4737569 (W.D. Pa. Oct. 5, 2011).

Plaintiffs, in the case at issue, do not allege any direct participation, whether by custom or express policy, by either Indiana County or the Indiana County Prison Board resulting in the violation of their constitution rights. Instead, Plaintiffs make boilerplate allegations, stated only in terms of legal conclusions, without any factual predicate. These "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a Rule 12(b)(6) motion to dismiss." Iqbal. at 678. Accordingly, Defendants' Motion to Dismiss Indiana County and the Indiana County Prison Board is granted without prejudice. If discovery conducted in this matter reveals evidence upon which this theory of liability can be supported, Plaintiffs may seek leave of Court to amend their Complaint.

**D. Claims for Negligent Hiring**

Plaintiffs allege claims against the Indiana County Prison Board for negligence in employing Defendants Gross and Dailey, who Plaintiffs believe "were highly likely to inflict harm and sexually assault inmates during the hiring process." ECF No. 8, ¶ 69. In particular, and without any specific factual foundation, Plaintiffs allege:

> By employing prison guards with a predisposition to engaging in sexual relationships with each other, which would later extend to the sexual harassment, sexual assault and the intimidation of inmates, Defendant Indiana County Jail Board, acting under color of law and in its official capacity, did intentionally or

13

> recklessly violate the Plaintiffs' right to be free from cruel and unusual
> punishment guaranteed by the Eighth Amendment of the United States
> Constitutuion under 42 U.S.C. § 1983.

Id. at ¶ 70. However, Plaintiffs' allegations of fault in hiring based on inadequate screening must demonstrate that "scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." Board of County Com'rs of Bryan County, Okl. V. Brown, 520 U.S. 397, 411 (1997). "[A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." Id. at 412 (emphasis in original). In other words, a plaintiff must show that there is a "direct causal link" between "the background of the particular officer hired [and] the particular constitutional violation the respondent suffered." Id. at 404, 414 n. 1.

Here, there are no allegations that proper employment screening would have placed the Indiana County Prison Board on actual or constructive notice that Defendants Gross and/or Dailey would commit the crimes alleged. The Complaint does not allege that either Gross or Dailey were the subject of prior criminal charges for inappropriate sexual conduct so as to establish a causal link between their background and the particular harm suffered by Plaintiffs. Further, the Complaint does not allege facts supporting the inference that the Indiana County Prison Board was aware of any inadequacy in the actual hiring process used, such that a change was necessary to prevent the risk of the harm actually suffered. The fact that two co-workers might engage in a sexual relationship with each other does not reasonably or plausibly lead to the conclusion that they would sexually assault inmates in their care.

Having separated the facts set forth in the Complaint from the legal conclusions broadly asserted, Plaintiffs' theory of liability, without more, does not meet the pleading threshold of plausibility set forth Iqbal. Accordingly, Plaintiffs' claims for intentional, reckless and/or negligent hiring asserted against Defendants Indiana County and Indiana County Prison Board are dismissed. However, if discovery conducted in this matter reveals evidence upon which this theory of liability can be supported, Plaintiffs may seek leave of Court to amend their Complaint.

## IV.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 10) as to Defendant Indiana County Jail is granted with prejudice. The Motion to Dismiss Defendants County of Indiana, the Indiana County Prison Board and Carol Hummel is granted without prejudice.

An appropriate Order follows.

**ORDER**

AND NOW, this 4th day of February, 2013, upon consideration of Defendants' Motion to Dismiss [ECF No. 10] and Plaintiff's response thereto, and as more fully set forth in the accompanying opinion, IT IS HEREBY ORDERED that the Motion to Dismiss as to Defendant

Indiana County Jail is granted with prejudice.  The Motion to Dismiss Defendants County of

Indiana, the Indiana County Prison Board and Carol Hummel is granted without prejudice.


BY THE COURT,


/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


cc:	All counsel of record by Notice of Electronic Filing